Calling case 15-6318 Ronnie Bowling v. Randy White Oral argument not to exceed 15 minutes per side. Catherine Marshall Ali for the appellant Good morning. Good morning. I'm trying to understand what this case is about. It seems that the state of Kentucky concedes that the petitioner is not incarcerated on the second sentence, the one that's before us from Rockcastle County. If the state concedes that, why are we in court on this? Well, Your Honor, the federal habeas statute requires that a petitioner be in custody on the conviction being challenged at the time the federal habeas petition is filed. Mr. Bowling here seeks to have his federal habeas petition challenging the Rockcastle conviction and sentence heard, and the district court below dismissed for lack of jurisdiction upon finding that Mr. Bowling was no longer in custody on that conviction. But that was erroneous. There are two reasons why the district court's decision was wrong and based on a faulty factual premise. The first was the district court determined that Mr. Bowling was entitled to 1,378 days of pretrial custody credit against that second Rockcastle sentence. Why does any of that matter? If the state says he's not in custody, we don't have anything to do with him being in custody. We concede he's not in custody. Whether the counting is wrong or not wrong, as far as the state's concerned, he's not in custody. Why isn't that the end of the matter? What are we here for? We're arguing, Your Honor, that he was in custody on that sentence at the time he filed his federal habeas petition, and thus there was jurisdiction to hear and decide that petition. Well, I know that's what you're arguing, but if he wasn't in custody, the state concedes he's not. But, Your Honor, the state conceding he's not is irrelevant here because we're arguing that he is, and he is in custody for two reasons. First, he was entitled to zero days of credit against that Rockcastle sentence, meaning that that Rockcastle... ...is a question of state law and sentence credits. I mean, it doesn't really seem to... And if Kentucky has determined that he's not in custody, why is that not... I mean, I think Judge Clay's question is, he is or he isn't. Well, Your Honor, what the Kentucky... It doesn't matter if the state wrongly says he's not in custody. The fact is, he's not in custody on that sentence. Well, Your Honor, but the problem here is that the attorneys for the Commonwealth are making that argument, but what the Department of Corrections has said is precisely the opposite. The Department of Corrections takes the position that Mr. Bowling was in custody in September 2012 when he filed his federal habeas petition, and in fact is in custody now. And that's the determination that this court owes deference to, not the position taken by the lawyers in this litigation. And I think... Well, Your Honor, I think no, under the Supreme Court's holding in Bowen v. Georgetown... We don't run around looking behind what the lawyers tell us to say, well, but maybe his client doesn't agree with the position he's taking. I mean, that's just not a function of this court. Well, it... I mean, we tell pro se parties all the time, speak through your attorney. I don't know why we shouldn't say that to the warden. Well, the reason here is that the deference is owed under Kentucky law, Chevron-like deference is owed to the position taken by the Department of Corrections in its official agency communications. Under the Supreme Court's holding in Bowen v. Georgetown, no deference is owed toward the position taken by the lawyers in this case, which are arguing precisely the opposite of what their client is saying. I think it may be helpful, Your Honors... ...that the confusion grew from the certification of a question to the Kentucky Supreme Court that assumed facts that were not correct. That's exactly right, Your Honor. So what... I'm struggling to understand what is the basis of Kentucky's position that he's not in custody when what you have, by my reading, and I stand to be corrected, what you have is the Kentucky Supreme Court saying, I'm going to assume what this district court told us, and I'm not going to take the second question, which would put the merits to me. I'm only going to answer the question of who has the right. I'm only going to answer the first question that was certified. And I'm struggling to understand how that is a position that controls this case. Explain to me the role of the Kentucky Supreme Court's decision or what in particular it is that you understand Kentucky relies on for making its determination of custody. Your Honor, I'll answer the second question first. Under controlling Kentucky Supreme Court precedent, Winstead v. Commonwealth is one case that holds this. The courts rely on the Department of Corrections to make determinations about when a particular defendant is in custody or not in custody. Here, as we've explained, there are six documents from the Department of Corrections, every one of which indicates that Mr. Bolling was in custody in September 2012 when he filed his federal habeas petition. In fact, in light of Kentucky's merger statute, he's still in custody on that sentence today. What the Kentucky Supreme Court did, as you recognize, Judge Stranch, is the district court certified this. The district court believed two erroneous things. One, that Mr. Bolling was deprived of credit that he was entitled to. And second, that the Department of Corrections had corrected that error. And the question that the district court certified that the Kentucky Supreme Court actually took up was whether the Department of Corrections had legal authority to correct that error. Well, here that's completely irrelevant because there's no indication in the record that either that he was entitled to the credit, and in fact the Kentucky Department of Corrections policy 28-108 dictates precisely the opposite, and there's no indication in the record that the Department of Corrections fixed any supposed error. In fact, the opposite is true. He had gotten his credit against the laurel. Yes, Your Honor. I think one of the problems in my understanding is whether when you are running concurrent sentences, the credit to the first conviction, which is the way the rule reads, applies to all of the convictions that are run concurrently at the same time. The document from the Department of Corrections, the resident record card, does not indicate that. That's correct, Your Honor. What is the rule for this concurrency? The rule derives from the Department of Corrections policy 28-0108, which states, where multiple felony indictments are involved, any applicable credit shall be applied to the indictment which is sentenced first. If an offender is being sentenced on more than one felony indictment, custody time credit shall be calculated separately. If those felony detainments overlap, as they do here, one indictment shall receive credit, meaning the first indictment, while the other indictments shall have zero days of credit. Which is AA-001, burglary in the first degree. That's correct, Your Honor. That was the credit given the 1,378 days. That's exactly right, Your Honor. Then your opposing counsel argues that the time served line at the bottom of that chart indicates time served for 22 years, 3 months, and 13 days. Why does the 22 years not make a difference to your argument? All that that time served row is saying is that this is the amount of time he spent in prison. It doesn't separate out how much of that time was on one conviction versus another. I think the more revealing components of the resident record card are the column you pointed out, which shows 1,378 days applied to the first laurel conviction entirely consistent with 28-0108, zero days of credit applied to the others. And then at the bottom, this is at page ID 205 of the record, it lists total sentence length, death, expiration date of all of these sentences, death sentence. And that is due to the operation of Kentucky's merger statute, which, as we've explained, when multiple felony concurrent sentences are running at the same time, they merge and none of those sentences expire until the time with the longest time to run. You are adopting what seems to me a very tortured view of Kentucky law. And frankly, it really doesn't matter what the Kentucky Department of Corrections says. It's what Kentucky law requires. And so, you know, I mean, it's well for you. If you choose to spend your time on this, that's fine. Maybe our questions have required you to. But, you know, I just know I'm not getting there with you. What the Kentucky Supreme Court said in the Winstead case is that the Department of Corrections is the body ultimately responsible for determining when prisoners are eligible for release. Kentucky law gives deference to the Department of Corrections. And here the judgment of the Department of Corrections is entirely consistent with the arguments we're making. If the Department of Corrections policies conflict with statute, the statute would control, correct? That's correct as an abstract principle, Your Honor, but there is no conflict here. If the policies conflict with Kentucky applicable case law, the applicable case law would control, right? Again, Your Honor, that's correct, but there's no conflict here. 280108 is a policy that doesn't conflict with anything in Kentucky law. And Kentucky's merger statute is one that the Commonwealth applies consistently. As we explained in our briefing in the Probst and Stewart cases, I think they're instructive here. There, each of the defendants were sentenced to life in prison. We've read the argument. If we don't agree with your merger claim, can you still win on your in-custody claim under the DOC's rules? Yes, Your Honor, they're completely independent arguments. So you don't need Lackawanna, and you don't have to have merger. The simple question is, does that statutory language actually govern this case, requiring avoiding of the DOC rules? Or do the DOC rules and the statute, are they capable of being read together without conflict? Yes, Your Honor, there's nothing inconsistent about the statute with the policy. What the Commonwealth has argued here is that the statute somehow requires pretrial custody credit to be applied to later convictions. The statute doesn't say that at all. All the statute says, and this is true, again, of the cases they've cited, Rogers v. Wingo, the Leinhart case, all those cases say is that when a defendant is serving multiple concurrent sentences, he's entitled to have the time served on the first sentence credited against the second. We're not arguing against that here. We haven't argued that Mr. Bowling's Rock Castle sentence should be deemed to start in 1996 when he was sentenced on that case. We agree that he should be deemed to have started that sentence in September of 1992 when he was sentenced on the Laurel County case. The only thing in question here is those 1,378 days that he spent in prison prior to being sentenced on the Laurel case. One more quick question. Is committed the date you begin your sentence, or is committed the date you are arrested and incarcerated? It's the day you begin your sentence, Your Honor, and the Kentucky Supreme Court answered that question definitively in the Winstead case. They said, and I'm quoting here, an award of jail time credit is not actually part of a defendant's sentence, even if that jail time credit award is included in the final judgment of conviction. They use a plain language definition they cite to Merriam-Webster's definition of sentence, and they reason under the common sense analysis that a sentence cannot begin until the sentence is imposed. And so they view pretrial custody credit as an entirely different animal, and not one of the cases that the Commonwealth has cited says anything about how to deal with pretrial custody credit. The only indication that we have about how to deal with pretrial custody credit comes from the Department of Corrections policy and their explanation of the policy in the documents in the record. Let me ask you this. I know your light's been on a while. Just to understand what's going on here, your client in this case was sentenced to 20 years, correct? Yes, Your Honor, but he's still in the custody of the Department of Corrections. Okay, let me finish the question. The 20 years, however the time of incarceration is counted, the 20 years have expired. He's been there much longer than 20 years. You'd agree with that, wouldn't you? Right? As of today's date, Your Honor? Yeah. Yes, as of today's date, he's been in custody and I have charge for more than 20 years. Okay, now he's been sentenced to 20 years. He's been there more than 20 years. However this case is resolved, your client will still be incarcerated because he's doing a life sentence in this Laurel County case. Now, are you bringing this case because you think that if the habeas is granted in the other case, you want to make sure this case doesn't cause him to remain incarcerated? No, Your Honor. Is that why you're bringing this case? No, Your Honor. We agree that if the Laurel County case's conviction is vacated, he would be entitled to release having served these 20 years today. Well, what's the purpose of this case? Because he served the 20 years. If the Laurel County case didn't exist, he'd be out and on the street. So what are we spending our time on this for? The purpose of this case, Your Honor, is twofold. One is that he was in custody at the time he filed his federal habeas petition and has a right to have that petition heard so long as the court has jurisdiction over it, which if he was in custody, the district court did. And second, many of the claims that Mr. Bolling has brought in this federal habeas, it's important to understand, I think, for purposes of this question, that the Laurel County case was predicated almost entirely on the evidence from the Rock Castle County case. They were almost completely overlapping. And so Mr. Bolling believes that if he is... But there were two separate crimes. There were two separate crimes, Your Honor, but there was... The evidence was in one case was a murder, a burglary, and a robbery, and then this case was an attempted murder and another robbery. That's right, Your Honor, but there was no evidence against Mr. Bolling in the Laurel County case other than the evidence in the Rock Castle case. And so the Commonwealth put on the entire Rock Castle County case in the Laurel case. And so Mr. Bolling... What I'm saying here is that Mr. Bolling, if Mr. Bolling gets relief on a claim in the Rock Castle case, let's say, for example, that the court finds that five of the witnesses who testified against him, both in the Rock Castle case and the Laurel County case, perjured themselves or otherwise lied during their testimony, and therefore that this conviction was invalid, I'm not saying that if he goes to Laurel County he's automatically entitled to relief there, but certainly that would be persuasive in the Laurel County case that another federal judge had found that much of the evidence that was used against him in the Laurel County case was tainted. And so there is the potential for some... Wait a minute, wait a minute. That's not what you're saying now is totally incorrect because the only issue before us is not whether evidence is tainted or anything of that nature. The only issue before us is whether your client is in custody for purposes of the habeas petition. That's correct, Your Honor. So all this other stuff you're talking about is not before us. That's exactly right, Your Honor. No, the fact that evidence was tainted might or might not be a grounds for federal habeas relief. I mean, we are really chasing rabbits right now. Well, I was trying to answer the question, Your Honor, of why this matters, why permitting Mr. Bowling to litigate his federal habeas petition in the Rock Castle case matters. I agree, none of that is before this Court. The only question before this Court is whether he was in custody at the time he filed that petition. If he was, it doesn't matter whether those claims are likely to grant relief. He's entitled to litigate that federal habeas petition. The date that matters is the date he filed the petition, and under either 28 or 108... I think you've answered my question.  Thank you, Your Honor. May it please the Court, Counsel. My name is Emily Lucas, and I represent the warden, Randy White. And our position is, as the district court said, this is an easy case. Mr. Bowling was entitled to the 1,378 days of time served credit. The Kentucky Supreme Court made that clear. His sentence began on February 25, 1989. It expired on February 25, 2009, three and a half years before he filed his habeas petition. The Kentucky Supreme Court relied on KRS 197-035-2. Concurrent sentences begin on the same date. And so the trial court, it said, made an error in this respect, in that the Department of Corrections had the duty to correct it. And that's what the Department of Corrections is holding, is putting forth as our position, regardless of what any employee said in a communication to Mr. Bowling. Mays v. Dinwiddie was a case that the district court relied on. Consecutive sentences are treated separately. Consecutive sentences are aggregate. They're not distinct segments, which distinct segments are for concurrent. It makes that implication. And, interestingly, Mays v. Dinwiddie relied on a case from this court, Clark v. Russell. It was a very succinct case, very short, but it said, petitioner may not challenge his concurrent sentence that had already expired. In Leonhard v. Commonwealth, which was Michigan. Talk about the statute a little bit. Oh, which statute? The statute that says you shall have your credit granted. 197. Yeah. Wasn't he granted his credit? He was. Under that statute. And some of the rules show that he was granted his credit on the burglary charge. Yes, Your Honor. And it doesn't show that any credit would be applied to the attempted murder charge. So didn't he get what the statute said? His sentence was concurrent with the burglary, the Laurel County sentence. So they started at the same time by operation of the statute. And there's plentiful case law to support that. There's Lenin v. Commonwealth, Ingram. I agree. I think you're right. When they're running together versus consecutive makes a difference. But if they're running together, the question becomes, is one not under the rules assigned the jail credit to the first conviction and the beginning of that incarceration? You mean the policy and the procedures, Your Honor? Mm-hmm. Those don't have authority over the statute or over case law. Well, that's our question. That's what we're trying to figure out is, does this statute make a requirement that is in conflict with the rules of the DOC, or does the Department of Corrections get to explain exactly how things are credited in order to comply with the statute so that we can read them together? Well, the Kentucky Supreme Court said this is what the corrections need to make. The courts can't make this correction. We're putting it on the department to do that. But they need to do this. You're saying that it was said that was in the certified question. You're referring to that opinion? Yes, Your Honor. I struggle a little bit with that, because the question that was certified assumed things that were flat wrong. How do you address the dissent in the Supreme Court's decision? The dissent also doesn't have authority. The majority opinion declined to make findings of fact. It took the statute. It took the law. It said that departments should correct a sentence whenever a prisoner is entitled to more than the error. That's exactly correct. I think that's a correct reading. The question is how does that apply here when they were making a generic statement that you have a right to have a credit done, and they said specifically we assume we're not making any findings of fact. We're not answering the merits question. All we're doing is assuming what the district court told us. Isn't there a problem with what the district court told them? The district court, in the order— In the certification order, saying the district court seemed to assume that he was— the question assumed that he had not been given the credit that he was supposed to be given, and aren't they supposed to give him the credit? That was the question. Should the Department of Corrections do this? And the Kentucky Supreme Court said yes. Exactly, but it begged the question of whether the DOC had already done that because it assumed incorrectly, didn't it, that the DOC had not done it when the DOC's records showed that they, in fact, had done it. And the DOC had argued up until that point that it had done it. But the DOC responded to the habeas petition originally and said, there's no jurisdiction. So the question— I believe that the district court went ahead and took the question of does that— should it apply in the first place? And if so, did the department do the correct thing? It felt there was conflicting case law with the Bard decision, and it wanted the Kentucky Supreme Court to straighten out that conflict in the case law. Can I ask you a question that just goes to kind of the sentence credits generally and my understanding is not really based—I'm not thinking of Kentucky law in particular. The way I understand this case was investigated, the Rockcastle case came subsequent to and was based on events that occurred subsequent to the offenses charged in the Laurel County case, right? Yes, Your Honor. Okay, so Mr. Bowling was first apprehended in connection with the Rockcastle County case. Yes, Your Honor. He was arrested the day that he shot at Rickerson. And so, I mean, the shots were exchanged with the victim, Leo. Yes. So you had a victim to identify. Yes, ma'am. So he would have been taken—because he was taken into custody first on Rockcastle, when it came time to credit sentence, to credit the jail time, the Rockcastle County case would have been the one against which it was credited because that would have been the time—I mean, he was in custody because of the Rockcastle case. Yes. And that would be how you would do it under federal law. I mean, federal judges don't calculate sentences. The Bureau of Prisons does that, but, you know, we—I mean, that's just the way it would work. Is there anything different about Kentucky law? I don't believe there is, Your Honor. The courts—well, no, the courts determine concurrent or consecutive, but calculation after that point— The court can order concurrent or consecutive, but after that the entity charged with responsibility for confining him takes over. Yes, Your Honor, and that's now codified in Statute 532.120, Section 1. And because he was first taken into custody on Rockcastle, that's where the credit would go when it was to be applied first, right? That's if the argument that it applies to the first indictment, it would be. And my understanding of the resident record is the list of zeros is a bookkeeping method because otherwise the summary at the bottom would have several thousand days of credit. So you think the 1,378 days applies to all of that list? Absolutely. And is credited to all of those? Yes, Your Honor. And does that comport with the DOC policy? The policy could be corrected. It really doesn't matter what the policy says. It isn't authority over this court or any other court. But don't you have a problem if the entity to which the calculation and application has been assigned, their rules are held in a federal case to be incorrect or to anytime there's an argued conflict, then they just don't matter? I struggle with the practical application of that. The policies that have been presented in this case were written prior to the Supreme Court's certification of law where it made a definite finding between the conflicting case law. And so the Department, of course, will take time to correct its procedures. Thank you. Anything further? I'd like to address the so-called mergers statute just very quickly. The LRC commentary, our Legislative Research Commission, the official commentary to that statute, points out that it is for the purpose of determining a maximum possible, the possible maximum. If you get a concurrent sentence of three years and five years, it's a five-year sentence. If they are consecutive, it is potentially an eight-year sentence. And there is case law to hold that up. Lienhardt said the date of final discharge doesn't determine the date of commencement or completion of a sentence. And then the court used Lienhardt again, used that language in a case called France v. Commonwealth. And these were both persistent felony offender calculations. So they have to be very specific. And the court rejected this argument that 532.120, Section 8.1, the merger statute, compels the result that a longer sentence will carry a shorter sentence along with it and extend it. So, and again, the magistrate, when it made its recommendation to the district court in this case, cited King v. Commonwealth, a Kentucky Supreme Court case. And while the magistrate was using it to talk about the credit that was already served, it mentioned that a 20-year sentence ordered in 2011 will expire with or without that credit prior to a 45-year sentence ordered in 2003. So they were both concurrent. So he had a 45-year sentence. But the 20-year portion was going to expire first. Even though you have that, is it Propez case that says if they run concurrent and then you get out and you violate, we get to punish you for both. That case doesn't carry authority. It is from the Kentucky Court of Appeals and it is unpublished. But it's what they're doing to someone who's in jail. And that is unfortunate for Mr. Probst. And Probst also relied on another unpublished case from the Court of Appeals. So, Stewart. So those don't apply either. So, in summary, in the interest of finality of judgment for this case and all other cases, the warden asked this court to affirm the dismissal of the district court because it lost jurisdiction when the sentence expired on February 25, 2009. Thank you. I'd like to just clean up one factual issue and then make three quick points. The first, in response to something that Judge Gibbons said, is Mr. Bowling was indicted on the Laurel County sentence first, not the Rock Castle sentence. And so, applying 280108, all of that credit should have gone to the Laurel sentence. To what do we look to say that the date of indictment controls as opposed to the date of being taken into custody? Because the result would be entirely what I described under federal sentence calculation. You look, Your Honor, to the Department of Corrections policy, which here is 280108. And just as you explained how federal courts don't determine sentences, that's exactly true under Kentucky law. The Kentucky courts don't determine sentences. They look to the Department of Corrections to do that. The Department of Corrections is statutorily vested with that authority. And what is it about that particular policy that says that the first case indicted rather than the first... I mean, you've got a period of jail time between the time he's apprehended and the time of any indictments. What it says, Your Honor, is there are two subsections that are relevant. First, where multiple felony indictments are involved, all applicable credit shall be applied to the indictment sentenced first, which here was the Laurel County case. The second relevant subprovision is, if an offender is sentenced on more than one felony indictment at the same time and those detainments overlap, the first indictment shall receive credit while all others shall have zero days of credit. That's exactly what happened here. The Commonwealth has no explanation for why the Department of Corrections takes the exact opposite position that they've taken here. They relied on the Department of Corrections documents in the district court proceedings and completely abandoned that reliance before this court. The Commonwealth is basically hanging its hat on that line from the Kentucky Supreme Court decision, but I think it's important to be clear about what the Kentucky Supreme Court did and didn't do here. As Judge Stranch acknowledged, they declined to answer the second question, which is exactly the question before this court, which was whether Mr. Bowling is in custody at the time he filed his federal habeas petition. Their decision, their offhand comment that he was entitled to that credit, was merrily repeating what the district court had said in the order certifying the question. It was premised on those two mistakes of fact that we've discussed, and when the Commonwealth says that the Kentucky Supreme Court was relying on the statute to reach that holding, that is completely false. They don't cite anything for that. It's just a thought. Regardless of whether he was in custody at the time he filed the habeas petition, is there a reason that his habeas petition with respect to the Rockcastle cases is not moot? Well, it's not moot, Your Honor. There's longstanding Supreme Court precedent holding that. I think Sabran v. New York is the case. It's 392 U.S. 40. That any time there's a conviction at issue, even if vacating that conviction would have no effect on the prisoner's liberty, that any time there's a valid conviction in place, the case is not moot. It's always better to have two convictions versus three, and having a felony conviction could have collateral consequences for him. So I think it's important also, just going back to the merger argument, my colleague here says that it's unfortunate for Mr. Probst, but it's critical to recognize that the Commonwealth is applying that merger statute consistently against defendants. In Stewart, which she noted was unpublished, but the Kentucky Supreme Court affirmed that unpublished decision in a published decision. In Probst and in Brock, which is a case that the Commonwealth has cited, in all three of those cases, the Commonwealth relied on Kentucky's merger statute to impose... The merger statute is another arrow in your quiver. Yes, Your Honor. Not a necessary arrow if you are going on the original in-custody analysis. That's correct, Your Honor. There are independent bases why the district court's judgment should be reversed, but I think Kentucky is using that merger statute as a sword against defendants, and it would be highly inequitable not to permit defendants to rely on that same statute for purposes of collaterally attacking their convictions. Thank you, Your Honor. Thank you, and the case is submitted.